UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

TERRELL THOMAS,

                              Plaintiff,

      v.

B. ARNOLD LLC and GBSC ESSEX LLC,

                             Defendants.

-------------------------------------------------------------x

1:25 CV 4938

COMPLAINT

JURY TRIAL REQUESTED

## **COMPLAINT**

Terrell Thomas ("Plaintiff"), by counsel, Hanski Partners LLC, as and for the Complaint in this action against B. Arnold LLC ("Landlord Defendant") and GBSC Essex LLC (also referred to as "Restaurant Defendant" and together with Landlord Defendant, "Defendants"), hereby alleges upon information and belief as follows:

## **INTRODUCTION**

1.      Plaintiff, an individual with a disability who requires a wheelchair for mobility, filed this action to stop Defendants' pervasive, ongoing, and inexcusable disability discrimination against him and other disabled individuals.

2.      Defendants own, lease, operate, and control Gotham Burger Social Club, a place of public accommodation through which they discriminated against Plaintiff and other disabled individuals.

3.      Defendants discriminated and continue to discriminate against Plaintiff as they created, and now maintain, a wheelchair inaccessible place of public accommodation, the restaurant known as Gotham Burger Social Club at 131 Essex Street, New York, NY 10002.

4.     As Gotham Burger Social Club is not wheelchair accessible, Defendants deny Plaintiff the opportunity to patronize the restaurant due to disability.

5.     Defendants therefore discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New York Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law, the New York Civil Rights Law ("CRL"), § 40 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York.

6.     Plaintiff seeks declaratory, injunctive, and equitable relief to redress Defendants' unlawful disability discrimination against him in violation his rights under the ADA, NYSHLR, CRL, and NYCHRL (collectively, the "Human Rights Laws").

7.     Plaintiff seeks monetary damages under the NYSHRL and NYCHRL, and statutory civil penalties under the CRL due to Defendants' unlawful disability discrimination against him. Plaintiff seeks also seeks attorney's fees, costs, and expenses under the ADA and NYCHRL.

8.     Defendants are directly liable to Plaintiff for their acts and omissions alleged herein.

9.     In addition, Defendants are vicariously liable to Plaintiff to the extent the acts and omissions alleged herein are those of Defendants' employees and agents

10.     Defendants chose to ignore the explicit legal requirements which obligated them to make their place of public accommodation physically accessible to individuals with disabilities, including those that require wheelchairs for mobility.

11.     Defendants' decision stemmed from their discriminatory belief that that the disabled do not deserve to be patrons of their place of public accommodation.

12.     By this action Plaintiff seeks to correct Defendants' discriminatory harm. Plaintiff seeks to compel Defendants to make their place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to nondisabled customers.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

15.     Plaintiff is a resident of the State and City of New York.

16.     Plaintiff suffers from a congenital condition that inhibits his ability to walk and restricts his range of motion and movement.

17.     Due to his medical condition, Plaintiff uses a wheelchair for mobility.

18.     Landlord Defendant does business in New York, including at 131 Essex Street, New York, NY 10002.

19. Pursuant to a deed dated October 4, 2001, Landlord Defendant owns the real property and building with a street address of 131 Essex Street in New York County, New York (hereinafter "131 Essex Street"),

20. 131 Essex Street is also known by the street address of 114 Rivington Street.

21. Pursuant to a written agreement of lease entered into by the Defendants, Landlord Defendant leased space on the ground floor and basement level of 131 Essex Street (the "Demised Premises") to Restaurant Defendant.

22. Pursuant to the Defendants' lease agreement the Demised Premises were leased for use and occupancy as an eating and drinking establishment, *i.e.*, a restaurant.

23. Tenant Defendant does business in New York, including at 131 Essex Street.

24. Tenant Defendant owns and operates a restaurant known as Gotham Burger Social Club at the Demised Premises ("Gotham Burger Social Club").

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

25. Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, Gotham Burger Social Club at 131 Essex Street, within the meaning of the ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; the NYSHRL, Executive Law § 292(9); and the NYCHRL, Administrative Code § 8-102.

26. Gotham Burger Social Club, a restaurant, is a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104); the NYSHRL, Executive Law § 292(9); and the NYCHRL, Administrative Code

§ 8-102 as it is a restaurant operated by private entities whose operations affect commerce.

27.     Numerous architectural barriers exist at Gotham Burger Social Club that prevent and restrict Plaintiff from accessing Gotham Burger Social Club as a person with a disability.

28.     The architectural barriers at Gotham Burger Social Club include changes in level (*i.e.*, a step) at the interior of the Demised Premises.

29.     The architectural barriers deny Plaintiff the opportunity to dine at Gotham Burger Social Club's tables, or if needed, the opportunity to enter its bathroom facilities.

**Alterations to the Demised Premises and Gotham Burger Social Club**

30.     Defendants made physical changes to the Demised Premises and to areas of 131 Essex Street that adjoin the Demised Premises which affected or could have affected the usability of the Demised Premises or part thereof after January 23, 1992.

31.     Physical changes were also made to 131 Essex Street and to the public sidewalk adjacent and connected to 131 Essex Street which affected or could have affected the usability of the Demised Premises or part thereof after January 23, 1992.

32.     These physical changes include the renovation of the Demised Premises pursuant to filings made by Landlord Defendant and Tenant Defendant with the NYC Department of Buildings, filings identified by various Job Numbers issued by the NYC Department of Buildings ("DOB Job Nos." and each a "DOB Job No.").

33.     Physical changes which affected or could have affected the usability of the Demised Premises or part thereof were made by Landlord Defendant prior to the buildout of Gotham Burger Social Club during the 2012/2013 calendar years (pursuant to DOB

Job No. 121417252) and the 2021/2022 calendar years (pursuant to DOB Job No. M00483414).

34.     Physical changes which affected or could have affected the usability of the Demised Premises or part thereof were made by Defendants for the buildout and construction of Gotham Burger Social Club during the 2023/2024 calendar years (pursuant to DOB Job Nos. M00848406, M00848425, M00848459, and M00863075).

35.     In addition, Landlord Defendant removed and replaced the sidewalk adjoining 131 Essex Street along Essex Street on or after the 2009 calendar year (pursuant to DOB Job No. 121417252).

36.     The services, features, elements and spaces of the Gotham Burger Social Club premises are not readily accessible to, or usable by Plaintiff as required by the 1991 ADA Standards for Accessible Design codified in 28 C.F.R. Part 36, Appendix D (the "1991 Standards" or the "1991 ADA") or in the 2010 ADA Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D and 28 CFR part 36 subpart D (the "2010 Standards" or the "2010 ADA")

37.     By creating a place of public accommodation that is not wheelchair accessible, Defendants denied Plaintiff equal opportunity to enjoy Gotham Burger Social Club due to disability thereby discriminating against Plaintiff in violation of the Human Rights Laws.

38.     Since Defendants opened Gotham Burger Social Club at the Demised Premises, Defendants have maintained the Demised Premises in wheelchair inaccessible form, denying Plaintiff equal opportunity to enjoy Gotham Burger Social Club due to disability.

39.     Defendants continue to maintain the Demised Premises in wheelchair inaccessible form, subjecting Plaintiff to an ongoing denial of equal opportunity to enjoy Gotham Burger Social Club due to disability.

40.     Defendants will not discontinue their denial of Plaintiff's rights under the Human Rights Laws to have equal opportunity to enjoy Gotham Burger Social Club.

41.     Defendants failed to design, construct, or alter Gotham Burger Social Club in compliance with the 1991 Standards, the 2010 Standards, the 1968 New York City Building Code, Administrative Code, Title 27 ("1968 BC"), including the 1968 BC Reference Standard ANSI 117.1-1986 ("1968 Ref Std"); the 2008 New York City Building Code ("2008 BC") inclusive of the 2008 BC Reference Standard ICC/ANSI 117.1 2003 ("2008 Ref Std"); the 2014 New York City Building Code ("2014 BC") inclusive of the 2014 BC Reference Standard ICC/ANSI 117.1 2009 ("2014 Ref Std"); and the 2022 New York City Building Code ("2014 BC") inclusive of the 2022 BC Reference Standard ICC/ANSI 117.1 2009 ("2022 Ref Std").

**The Architectural Barriers**

42.     Barriers to access Plaintiff encountered at Gotham Burger Social Club which deterred him, and that now continue to deter him from patronizing Gotham Burger Social Club include the following:

I.  None of Gotham Burger Social Club's public entrances are accessible. *Defendants fail to provide that at least 50% of all public entrances are accessible. See 1991 ADA § 4.1.3(8)(a)(i).*
    *Defendants fail to provide that at least 60% of all public entrances are accessible. See 2010 ADA § 206.4.1.*
    *Defendants fail to provide that primary entrances are accessible. See 1968 BC § 27-292.5(a).*
    *Defendants fail to provide that all public entrances are accessible. See 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § 1105.1.6*

II.   No signage identifies an accessible entrance to Gotham Burger Social Club (to the extent Defendants claim they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. See 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; and 2014 BC §§ 1101.3.4; and 1110.*

III.  No directional signage that indicates the location of an accessible entrance is provided at the inaccessible public entrance to Gotham Burger Social Club (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible entrance. See 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*
*Defendants fail to provide directional signage at necessary locations. See 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible entrance indicating the route to the nearest accessible entrance. See 2008 BC § 1110.2; and 2014 BC §§ 1101.3.3; and 1110.2.*

IV.   The corner entrance (corner of Essex and Rivington Street) to Gotham Burger Social Club lacks level maneuvering clearances at the pull side of the door.
*Defendants fail to provide an accessible door with level maneuvering clearances. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref. Std § 404.2.3; and 2014 Ref Std § 404.2.3.*

V.    The locked, non-public, Essex Street entrance to Gotham Burger Social Club (which is locked and directs customers to the corner entrance) lacks level maneuvering clearances at the pull side of the door.
*Defendants fail to provide an accessible door with level maneuvering clearances. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref. Std § 404.2.3; and 2014 Ref Std § 404.2.3.*

VI.   There is no accessible seating at any of Gotham Burger Social Club dining areas.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

*Defendants fail to provide that at least 10% of the dining surfaces provided to customers are accessible 2022 BC § 1108.2.9.1.*

VII.    There are no accessible dining surfaces (tables) in the southern dining area. All tables have chairs, and a pedestal and/or booths that obstruct knee and toe clearances required for a forward approach to the seating. *Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*
*Defendants fail to provide that at least 10% of the dining surfaces provided to customers are accessible 2022 BC § 1108.2.9.1.*
*Defendants fail to provide (due to chairs, table pedestals or table legs and/or booths) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014 Ref Std § 902.2.*

VIII.    There are no accessible dining surfaces (tables) in the southern dining area. All tables exceed 34 inches in height. *The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 ADA § 4.32.4; 2010 ADA § 902.3; 1968 Ref Std § 4.30.4; 2008 Ref Std § § 902.3; and 2014 Ref Std § 902.4.*

IX.    There is no accessible seating at dining surfaces (counters) in the southern dining area. *Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA §§ 5.1 and 5.2.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA §§ 226.1 and 902.*
*Defendants fail to provide that at least 5 percent of the seating and standing spaces are accessible. See 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*
*Where seating is provided at dining or drinking counters, at least one 60 inch (1524 mm) long portion of the counter shall be provided with two accessible seating spaces. Such accessible seating space shall not be located within 40 inches (1016 mm) of either end of the counter, so as to provide individuals with disabilities with the same level of*

*service and experience as that provided to others. 2022 New York City Building Code § 1108.2.9.2.*

X.    The dining counter in the southern dining area exceeds 34 inches in height.
*The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 ADA § 4.32.4; 2010 ADA § 902.3; 1968 Ref Std § 4.30.4; 2008 Ref Std § 902.3; and 2014 Ref Std § 902.4.*

XI.    The dining counter in the southern dining area of Gotham Burger Social Club is not accessible due to fixed stools
*Defendants fail to provide a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014 Ref Std § 902.2.*

XII.    There are no accessible dining surfaces (tables) in the northern dining area. All tables have chairs, and a pedestal and/or booths that obstruct knee and toe clearances required for a forward approach to the seating.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*
*Defendants fail to provide that at least 10% of the dining surfaces provided to customers are accessible 2022 BC § 1108.2.9.1.*
*Defendants fail to provide a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014 Ref Std § 902.2.*

XIII.    There is no accessible dining surfaces (counters) at the window counter dining within the northern dining area.
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA §§ 5.1 and 5.2.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA §§ 226.1 and 902.*

*Defendants fail to provide that at least 5 percent of the seating and standing spaces are accessible. See 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*
*Where seating is provided at dining or drinking counters, at least one 60 inch (1524 mm) long portion of the counter shall be provided with two accessible seating spaces. Such accessible seating space shall not be located within 40 inches (1016 mm) of either end of the counter, so as to provide individuals with disabilities with the same level of service and experience as that provided to others. 2022 New York City Building Code § 1108.2.9.2.*

XIV.    The dining counter in the northern dining area exceeds 34 inches in height.
*The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 ADA § 4.32.4; 2010 ADA § 902.3; 1968 Ref Std § 4.30.4; 2008 Ref Std § 902.3; and 2014 Ref Std § 902.4.*

XV.    Accessible tables at Gotham Burger Social Club are not identified by the International Symbol of Accessibility (to the extent Defendants claim they provide accessible tables).
*Defendants fail to provide that accessible seating shall be identified by the International Symbol of Accessibility. See 2008 BC § 1110.1(9) and 2014 BC § 1110.1(11).*

XVI.    There is no accessible route connecting all the public accommodations within Gotham Burger Social Club as a change in level within the floor (steps) greater than ½-inch in height obstructs wheelchair access to the northern portion of the Demised Premises.
*Defendants fail to provide that there is one accessible route connecting all the public accommodations within the site. See 1991 ADA §§ 4.3.2, 4.1.2(2), and 4.1.3(1); 2010 ADA §§ 206.1 and 206.2; 1968 BC § 27-292.5; 1968 Ref Std § 4.3.2; 2008 BC § 1104; and 2014 BC § 1104.*

XVII.    There is no accessible route between Gotham Burger Social Club's northern and southern dining areas.
*Defendants fail to provide that there is one accessible route between the northern and southern dining area. See 1991 ADA §§ 4.3.2, 4.1.2(2), 4.1.3(5) and 4.1.3(1); 2010 ADA §§ 206.1 and 206.2; 1968 BC § 27-292.5; 1968 Ref Std § 4.3.2; 2008 BC § 1108.2.9; and 2014 BC § 1108.2.9.*

XVIII.  There is a change in level within the floor (steps) greater than ½-inch in height which obstruct access to the northern dining area.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; and 2014 Ref Std § 303.4.*

XIX.  There is no accessible route to the bathrooms (located in the northern portion of the Demised Premises) due to a change in level within the floor (steps).
*Defendants fail to provide an accessible route to each level required to be accessible. See 1991 ADA §§ 4.3.2; 4.1.2(2); 4.1.3(5) and 4.1.3(1); 2010 ADA §§ 206.1 and 206.2; 1968 BC § 27-292.5; 1968 Ref Std § 4.3.2; 2008 BC § 1104; and the 2014 BC § 1104.*

XX.  There is no directional signage indicating the location of the nearest accessible toilet room (to the extent Defendants claim they provide accessible toilet rooms).
*Defendants do not provide and display signage at the inaccessible toilet (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible toilet. See 1991 ADA § 4.1.6(1)(k)(3)(e)(iii); and 2010 ADA § 216.8.*
*Defendants fail to provide directional signage at necessary locations. See 1968 BC § 27-292.18(b).*
*Defendants fails to provide directional signage by the inaccessible toilet indicating the route to the nearest accessible toilet. See 2008 BC § 1110.2; and 2014 BC §§ 1101.3.3; and 1110.2.*

**Plaintiff is Deterred from Patronizing Gotham Burger Social Club**

43.  In December of 2024, Plaintiff went to Gotham Burger Social Club as he wanted to try their renowned smash burgers. However, when Plaintiff arrived he discovered that he was not the only person that wanted to dine at Gotham Burger Social Club as there was s long line of people waiting to enter, with the line extending past the public entrance door on Rivington Street and around the corner heading northward on Essex Street.

43.    Put off by the long line and likely wait, Plaintiff decided he would have to dine at Gotham Burger Social Club on a different day.

44.    In March 2025, Plaintiff desired burgers so he went to to Gotham Burger Social Club, hoping that the line would not be too long.

45.    When Plaintiff arrived at Gotham Burger Social Club, he decided the line and therefore the wait was manageable, so Plaintiff waited patiently, eagerly anticipating the food he would soon enjoy.

46.    When it was Plaintiff's turn to enter Gotham Burger Social Club, Plaintiff went inside, looked around and saw a step in the middle of the restaurant blocking his ability to access the tables in the area past the step.

47.    The step also denied him access to the restrooms which are located in the portion of the restaurant beyond the step.

48.    Plaintiff also saw that there were no wheelchair accessible tables or counters at which he could eat his food in the portion of the space he was able to access: the tops of the tables were too high for a wheelchair user to dine at, as were the tops of the dining counters. In addition, some of the dining counters were obstructed by fixed stools that could not be moved.

49.    Obstructed from dining inside Gotham Burger Social Club, Plaintiff ordered his food for takeaway.

50.    Although Plaintiff liked Gotham Burger Social Club's smash burgers and fries and would like to dine at Gotham Burger Social Club Plaintiff is deterred from dining there as the space is not wheelchair accessible.

51.    Plaintiff personally encountered the noted architectural access barriers at Gotham Burger Social Club's public entrance, interior route, and the dining surfaces in each of the interior dining areas when he patronized Gotham Burger Social Club.

52.    The architectural access barriers at Gotham Burger Social Club's Plaintiff encountered denied Plaintiff the opportunity to enjoy Gotham Burger Social Club due to disability.

53.    Since the date Plaintiff visited Gotham Burger Social Club the above-noted architectural access barriers at Gotham Burger Social Club's public entrance and doorway have deterred Plaintiff from visiting and dining at Gotham Burger Social Club.

54.    Plaintiff went to Gotham Burger Social Club to try its smash burgers.

55.    Plaintiff liked the smash burgers and other food he ate from Gotham Burger Social Club, and desires to have the opportunity to eat at Gotham Burger Social Club no different than other members of the public.

56.     However, Plaintiff is deterred from dining at Gotham Burger Social Club due to the architectural access barriers he encountered at Gotham Burger Social Club.

57.    The above-noted architectural access barriers at Gotham Burger Social Club's public entrance, interior route, the inaccessible dining surfaces at each of the interior dining areas and the inaccessible bathrooms continue to deter Plaintiff from patronizing Gotham Burger Social Club.

58.    Plaintiff learned of the above-noted architectural access barriers at the locked, non-public, Essex Street entrance prior to filing this Complaint.

59.    Plaintiff is also deterred from patronizing Gotham Burger Social Club due to the architectural access barriers at the Essex Street entrance

60.     Upon information and belief, a full inspection of Gotham Burger Social Club will reveal the existence of other barriers to access.

61.     To effectuate the remedial purpose of the ADA (and avoid piecemeal, and this additional litigation) Plaintiff requires a full inspection of Gotham Burger Social Club to catalogue all the architectural elements and areas at the Demised Premises that do not comply with the ADA.

62.     Plaintiff hereby notices Defendants that he intends to amend this Complaint to include any accessibility violations discovered during an inspection of Gotham Burger Social Club that are not contained in this Complaint.

**Defendants' Discriminatory Practices**

63.     Defendants denied Plaintiff the opportunity to participate in or benefit from their services and accommodations because of his disability.

64.     Defendants have not complied with their obligations under the Human Rights Laws to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws.

65.     Defendants have failed to make or provide Plaintiff and other similarly situated individuals with accommodations or modifications for disability.

66.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the Human Rights Laws: This is evident as the barriers to access at Gotham Burger Social Club continue to exist and deter Plaintiff.

**Plaintiff's Desire to Dine at Gotham Burger Social Club Continues**

67.     Plaintiff visits the Lower East Side area where the Gotham Burger Social Club is located three or more times a year.

68.    Plaintiff visits the Lower East Side area in which Gotham Burger Social Club is located for a few reasons such as to see and go out with friends that live in the neighborhood; and to experience the area's restaurants and nightlife.

69.    Plaintiff attempted to dine at Gotham Burger Social Club during December 2024 and March 2025. Although Plaintiff purchased food at Gotham Burger Social Club in March 2025 he was prevented from dining there as there were no wheelchair accessible dining surfaces, with the route to many dining surfaces and the bathroom blocked by an interior step in the middle of the Demised Premises.

70.    Plaintiff's desire to dine at Gotham Burger Social Club continues as he likes its smash burger, and because Gotham Burger Social Club offers other items that Plaintiff has yet to try.

71.    However, the architectural access barriers at Gotham Burger Social Club deter Plaintiff from patronizing Gotham Burger Social Club.

72.    By maintaining barriers to wheelchair access at Gotham Burger Social Club Defendants deny Plaintiff, based on disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations (*i.e.*, "equal access" *a/k/a* "equal opportunity") Defendants offer at Gotham Burger Social Club.

73.    Plaintiff intends to patronize Gotham Burger Social Club one or more times a year after it becomes accessible – meaning compliant with the 2010 Standards and the accessibility provisions of the NYC Building Code.

74.    Plaintiff continues to suffer an injury due to Defendants maintenance of architectural barriers at Gotham Burger Social Club. Although Plaintiff desires to dine at

Gotham Burger Social Club, Defendants' maintenance of these barriers denies him the opportunity to dine at Gotham Burger Social Club based on disability.

75.     Defendants discriminate against Plaintiff in violation of the ADA, the NYSHRL and the NYCHRL as they created, maintain and have failed to remove architectural barriers to wheelchair access at Gotham Burger Social Club.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

76.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

77.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

78.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

79.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract, such as a lease agreement.  28 C.F.R. 36.201(b).

80.     Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

81.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

82.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  42 U.S.C. §12183(a)(1) and 28 C.F.R. § 36.401(A)(1).

83.     Gotham Burger Social Club is not readily accessible and usable as required, and Defendants fail to provide an integrated and equal setting for the disabled at Gotham Burger Social Club, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

84.     Landlord Defendant failed to perform its alterations to the Demised Premises so that the alterations are accessible to the maximum extent feasible in violation of 42 U.S.C. §12183(a)(2); and 28 C.F.R. §§ 36.402 and 36.406

85.     Defendants failed to perform their alterations to Gotham Burger Social Club so that the alterations are accessible to the maximum extent feasible in violation of 42 U.S.C. §12183(a)(2); and 28 C.F.R. §§ 36.402 and 36.406.

86.     The paths of travel to the altered areas of primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

87.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would have been readily achievable to make their place of public accommodation fully accessible prior to Plaintiff's attempt to visit in calendar year 2024.

88.    It remains readily achievable for Defendants to make their place of public accommodation fully accessible.

89.    By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA. 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

90.    In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

91.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R § 36.101 *et seq.*

92.    Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

93.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

94.    Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

95.     In 2019, the New York State legislature enacted legislation which amended the construction provision of the NYSHRL, Executive Law § 300, to require that the protections and provisions be liberally construed. NY Session Law 2019, ch 160.

96.     The amendment requires the NYSHRL's provisions and the protections it provides to be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". Executive Law § 300.

97.     By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005, Local Law 85 of 2005, the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

98.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

99.     Defendants discriminated against Plaintiff in violation of NYSHRL, Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants have aided and abetted others in committing disability discrimination.

100.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL, Executive Law § 296(2)(c)(iii).

101.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL, Executive Law § 296(2)(c)(v).

102.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

103.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

104.    As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

105.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

106.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

107.    Plaintiff suffers from various medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - therefore Plaintiff has a disability within the meaning of the NYCHRL, Administrative Code § 8-102.

108.    In 2005, the NY City Council enacted Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), which requires that the NYCHRL's provisions and protections be construed liberally, and independently from similarly worded Federal and state laws, as the NY City Council determined the NYCHRL was being construed to

narrowly. Local Law 85 of 2005, § 1 ("It is the sense of the Council that New York City's Human Rights Law has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law.").

109.    The Restoration Act clarified the scope and required interpretation of the NYCHRL, *Id*., and amended the NYCHRL's construction provision, Administrative Code § 8-130, to confirm that any "parallelism" between the NYCHRL and federal and New York State anti-discrimination laws such as the ADA and NYSHRL is improper stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 (emphasis added).  Consequently, to the fullest extent possible, the NYCHRL must be construed broadly in favor of Plaintiff.  *See also* New York City Local Law 35 of 2016.

110.    Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL, Administrative Code § 8-107(4).  Each of the Defendants have aided and abetted others in committing disability discrimination.

111.    Defendants have committed disability discrimination against Plaintiff, and continue to do so, in violation of the NYCHRL, inclusive of § 8-107(4), because of the violations of the ADA as alleged herein.

112.    Defendants have committed disability discrimination against Plaintiff, and continue to do so, in violation of the NYCHRL, inclusive of § 8-107(4), because of the violations of the ADA as alleged herein.

113.    Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL, Administrative Code § 8-107(4), by designing, creating and/or maintaining an inaccessible commercial facility/space.

114.    Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL, Administrative Code § 8-107(4).

115.    Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL, Administrative Code § 8-107 (4).

116.    Defendants' failure to provide reasonable accommodations for persons with disabilities, inclusive of Defendants' failure to remove the barriers to access identified herein, and their consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of NYCHRL, Administrative Code §§ 8-107(4) and 8-107(15).

117.    In violation of the NYCHRL, Administrative Code § 8-107(6), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of

their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

118.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, Landlord Defendant has continuously controlled, managed, and operated the public sidewalk abutting 131 Essex Street, which includes the portion of the sidewalk that constitutes the both the public entrance to Gotham Burger Social Club, Defendants' place of public accommodation, and the exterior route to the public entrance.

119.    Landlord Defendant's failure to construct and maintain an accessible entrance and an exterior route from the public sidewalk adjoining 131 Essex Street to Defendants' place of public accommodation constitutes disability discrimination in a violation of the NYCHRL.

120.    Defendants discriminated against Plaintiff in violation of the NYCHRL, Administrative Code, § 8-107(4), by maintaining and creating an inaccessible public accommodation.

121.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

122.    Because Defendants' place of public accommodation is not readily accessible and usable by people with disabilities, Defendants policy or practice has a disproportionately negative impact on the disabled (including plaintiff).

123.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

124.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

125.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

126.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

127.    Defendants have engaged in the Defendants acts detailed in this Complaint with willful or wanton negligence, recklessness, and a conscious disregard of the rights of others, or conduct so reckless as to amount to such disregard, for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL, Administrative Code § 8-502.

128.    Defendants continue to engage in the acts detailed in this Complaint with willful or wanton negligence, recklessness, and a conscious disregard of the rights of others, or conduct so reckless as to amount to such disregard, for which Plaintiff is

entitled to an award of punitive damages pursuant to NYCHRL, Administrative Code §
8-502.

129.    By refusing to make their place of public accommodation accessible,
Defendants unlawfully benefitted from their actions detailed in this Complaint as they
collect revenue from a place of public accommodation that they failed to make compliant
with the Human Rights Laws, pocketing the money that they should have lawfully
expended to create a wheelchair accessible space in compliance with the Human Rights
Laws.

130.    Defendants continue to unlawfully benefit from their actions detailed in
this Complaint by collecting revenue from a place of public accommodation that they
refuse to make compliant with the Human Rights Laws pocketing money that they should
lawfully expend to create a wheelchair accessible space in compliance with the Human
Rights Laws. Defendants' unlawful profits plus interest must be disgorged.

131.    Plaintiff has suffered and will continue to suffer damages in an amount to
be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

132.    Plaintiff realleges and incorporates by reference all allegations set in this
Complaint as if fully set forth herein.

133.    Defendants discriminated against Plaintiff pursuant to NYSHRL,
Executive Law § 296.

134.    Consequently, Plaintiff is entitled to recover the monetary penalty
prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

135.    Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

136.    Plaintiff will continue to suffer unlawful discrimination from Defendants' failure to comply with the Human Rights Laws.

137.    Injunctive relief is therefore necessary to ensure Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the Human Rights Laws.

138.    The necessary injunctive relief includes an order which requires Defendants to physically modify their place of public accommodation, and which obligates Defendants to change the policies, practices, and procedures pursuant to which they operate their place of public accommodation.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the NYSHRL, and the NYCHRL;

B.   Enter declaratory judgment declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

C.  Issue a permanent injunction ordering **Defendants to cease serving customers within the Demised Premises for indoor dining services and indoor pickup of to go orders** until Defendants remove all violations of the ADA (inclusive of violations of the 1991 Standards or the 2010 Standards), the NYSHRL, and the NYCHRL;

D.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not recur;

E.  Award Plaintiff compensatory damages due to Defendants' violations of the NYSHRL and the NYCHRL;

F.  Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

G.  Assess monetary penalties pursuant to New York State Civil Rights Law § 40-d against Landlord Defendant and Restaurant Defendant, individually, for each violation of the NYSHRL and New York State Civil Rights Law § 40-c, and award Plaintiff the monetary penalties assessed against Defendants pursuant to New York State Civil Rights Law §§ 40-d;

H.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYSHRL and the NYCHRL;

I.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA; and

J.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: June 11, 2025
         New York, New York

Respectfully submitted,

**HANSKI PARTNERS LLC**

By:____/s_____
       Adam S. Hanski, Esq.
       Attorneys for Plaintiff
       85 Delancey Street
       New York, New York 10002
       Telephone: (212) 248-7400
       Email: ash@disabilityrightsny.com